CASE 93—ACTION TO SET ASIDE AN EXECUTION SALE—FEB. 25.

# White v. Roberts.

APPEAL FROM LEE CIRCUIT COURT.

JUDGMENT QUASHING SALE AND DEFENDANT APPEALS.   AFFIRMED.

HOMESTEAD—ABANDONMENT—EXECUTION   SALE—SEPARATE   TRACTS—
FAILURE TO OFFER SEPARATELY.

Held:  1. Where a debtor and his wife left the debtor's farm, rent-
ing out the dwelling house thereon, and moving to a town where
they engage in pursuits from which they realize much more
than they could hope to realize on the farm, their indefinite
intention to return to the farm is not sufficient to prevent the
removal from operating as an abandonment of the homestead.

2. Where a farm was divided into two separate tracts by a county
road, in selling the land under execution each tract should have
been offered separately; and it appearing that the smaller of the
two tracts, if it had been sold separately, would have realized a
sum sufficient to satisfy the execution, it was proper to quash
the sale and direct a resale under *venditioni exponas*.

E. E. HOGG & J. K. ROBERTS, FOR APPELLANT.

In this case there are a number of irregularities complained
of which have been excepted to but the principal question to be
decided is, whether the land sold is exempt to the execution
debtor as a homestead. The land sold is in Madison county and
had been occupied by plaintiff as a homestead, but we claim he
had abandoned it and moved to Lee county.  He claims how-
ever it was his intention to return to it.   He says in his peti-
tion that he had temporarily left it for business purposes, "and
as soon as he shall have gotten through with said trading bus-
iness (in Lee) and shall believe he can earn more profits or
that it will be otherwise to his interests by returning to his
said homestead he intends to return to and occupy it."  He tes-
tifies as follows: "I claim said land as my homestead; it
was my intention to return to said farm in a couple of years,
it has been my intention to return to said farm.  I moved from
Madison to Lee in 1897; made application for license to retail
liquor in December, 1896 and in May 1897, have been engaged in
said business now three years, have been a distiller in Lee

since the spring of my return; listed hotel here last year at $800 and $1,000 in cash—my profits from my business here are about $1,500 per year."

This appeal is from a judgment of the Lee circuit court vacating an execution sale of said land in an equitable proceeding under section 1710, Kentucky Statutes, which sale was regularly made under execution and bought at said sale by the appellant.

From the above allegations and evidence we contend there was a complete abandonment of the homestead. Carter v. Goodman, 94 Ky., 544; 11 Bush, 228; Bach v. Whittaker, 22 R., 1226; Craig v. Garnet, 9 Bush, 97; Hart v. Blight, 3 Mon., 273.

MARCUM & POLLARD, FOR APPELLEE.

Two questions are presented by this record. The appellee contends that the sale was void because:

1. The sheriff sold more land than was necessary to pay plaintiff's debt, interest and cost, and,

2. Because the land sold, being the homestead of the execution debtor, was exempt from levy and sale.

1. The execution was for $100 with interest from April 8, 1892 and $7.85 costs subject to a credit of $10 paid October 23, 1892. The sale was made May 2, 1898. The total amount of principal and interest to the day of sale was $124.15 cost of suit $7.88, making $132.80, add sheriff's commission $7.96, making a total of $140.76 due on day of sale. To this the sheriff added $4.20 for summoning and swearing appraisers and their services. There is no law for this charge. The sheriff sold the entire tract of land worth $800 or $900, and it can be divided without impairing its value, as shown by the evidence.

2. As to the claim for homestead. This land was his homestead on which he and his family had resided for several years. He moved to Beattyville, temporarily, leaving his farm in possession of a tenant and leaving thereon tools and farming utensils. He swears it was his intention to return and occupy the premises as a homestead; he had never voted out of Madison county since he moved to Beattyville, had more than once returned to his home to vote. The hotel he occupied in Beattyville belonged to his wife.

Under the facts we contend that the judgment of the lower court vacating the sale, should be affirmed.

### AUTHORITIES CITED.

Kentucky Statutes, sec. 1682, subsec 1; Davidson v. McMurty, &c., 2 J. J. Mar., 68; Stover v. Boswell's Heirs, 3 Dana, 236; Gearheart v. Tharp, 9 B. Mon., 35; Isaacs v. Gearheart, 12 B.

Mon., 231; Addison v. Crow, 5 Dana, 277; Dawson v. Litsey, 10 Bush, 408; Shropshire v. Pullen, 3 Bush, 512; Thomas v. Thomas, 87 Ky., 343; Campbell v. Potter, 16 R., 535; Cin. Leaf Tob. Warehouse Co. v. Thompson, 20 R., 1439; Carroll v. Dawson, 20 R., 349; Summers v. Sprigg, 18 R., 206, 207.

OPINION OF THE COURT BY JUDGE BURNAM.—AFFIRMING.

On the first day of March, 1898, an execution issued from the office of the Lee circuit court in favor of appellant and against appellee for $100, with six per cent. interest thereon from the eighth day of April, 1892, and $7.85 which had been adjudged appellant for costs, directed to the sheriff of Madison county, which was levied by him upon a tract of seventy-three acres of land belonging to the appellee; and on the first day of May term of the Madison county court the land was sold by the sheriff at the court-house door, appellant becoming the purchaser thereof at the price of $144.40. On the 24th day of September, 1898, the appellee, Roberts, filed his petition in equity, seeking to set aside the sale upon two grounds: First, he alleges that he is an actual, *bona fide* housekeeper, with a family, resident in this Commonwealth, and that the entire tract of land sold did not exceed in value $1,000, and was for this reason exempt from sale; second, that more land was sold than was necessary to satisfy the execution under which the sale was made.

It appears from the pleadings and proof that the appellee, Roberts, lived on the tract of land in controversy for several years prior to 1897 with his family; that it was reasonably worth from $800 to $900; that it was divided into two separate tracts by a county road, 15 acres lying on one side, and 58 on the other; than in 1897 appellee rented out the dwelling house on the place, and moved back to Beattyville, where he had previously resided, with his family; that

his wife, who had some means of her own, started a small distillery, which he ran as distiller; and that in addition his wife ran a hotel, and he a barroom. Whilst he testifies that he always claimed the tract of land in Madison county as a homestead, and that he intended to return to it whenever his interests justified him in doing so, yet he says that he and his wife are realizing about $1,500 per annum from their present pursuits, and as this sum is largely in excess of what, under the most favorable circumstances, he could raise on his farm, his intention to return is too vague and indefinite to justify the court in treating his removal therefrom as a temporary one. We therefore think the circuit judge properly held the property liable to execution.

The practice of selling real estate under execution was unknown at common law, and the rule is that a statute authority whereby title may be divested must be strictly followed in all the requisites which appear to be beneficial to the owner. Subsection 1 of section 1682 of the statutes prescribes that "only so much land can be sold as will satisfy the execution under which the sale is made." Whilst the law secures to the creditor his just demand, and sequestrates the property of the debtor to satisfy it, it carefully guards his interest in all the various steps taken leading to the sale of his property; and "the sale under execution of several parcels of land at one bid, and putting up for sale a whole tract when some portion of it could be sold to satisfy the debt, is uniformly condemned by the courts, as tending to the sacrifice of property and to oppression of the debtor." See Herman, Ex'n. p. 349, and authorities there cited. And one who seeks to sustain such a sale must show its justice and expediency. Ordinarily in the sale of land under execution each tract should be offered separately, and, if they fail to sell in this way, the officer will then be justified in sell-

ing all the property together, on a reasonable bid, if he make full return of the facts. The proof in this case shows that the detached tract of 15 acres, if it had been sold separately, would have realized a sum sufficient to have extinguished the debt of appellant, leaving the main tract untouched.

We are therefore of the opinion that the circuit judge did not err in quashing the sale and directing a resale under *venditioni exponas.* The judgment is therefore affirmed both on the original and cross appeals.